UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
THE NORTHERN ASSURANCE COMPANY
OF AMERICA,

                Plaintiff,

-against-                          **OPINION & ORDER**
                                         **08 CV 00976 (SJF)(RER)**

D'ONOFRIO GENERAL CONTRACTORS
CORP.,
                Defendants.
----------------------------------------------------------X
FEUERSTEIN, J.

I.    Introduction

On March 7, 2008, plaintiff the Northern Assurance Company of America ("Plaintiff") commenced this action against defendant D'Onofrio General Contractors Corp. ("Defendant") seeking a declaratory judgment pursuant to 28 U.S.C. § 2201. Before the Court is the motion of Plaintiff for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"). For the reasons set forth herein, Plaintiff's motion is GRANTED.

II.    Background[1]

Plaintiff issued a marine insurance policy (the "Policy") to Defendant. On or about March 13, 2007, the Policy was endorsed to add the barge Hughes 914 (the "Barge").

---

[1] The facts are derived from Plaintiff's statement of material facts pursuant to Local Rule 56.1 and the accompanying declarations and other evidentiary material filed in support of Plaintiff's motion for summary judgment, as well as Defendant's response to Plaintiff's statement and counterstatement of disputed material facts and the accompanying declarations and evidentiary material filed in response to the motion.

1

In or about April 2007, while the Barge "was under tow by [a] tugboat . . . in navigable waters between Boston and Rhode Island en route to New York," it was diverted to a "safe harbor near Fort Adams, Newport, Rhode Island" because of an "ingress of seawater." (Pl.'s Local Rule 56.1 Statement of Undisputed Facts in Support of Summ. J., filed Dec. 8, 2008, ¶¶ 7-9 ("Pl.'s 56.1 Stmt"); Def.'s Rule 56.1 Counterstatement of Disputed and Undisputed Material Facts, filed Dec. 8, 2008 ("Def.'s 56.1 Stmt"), ¶¶ 7-9.)

As a result of damage sustained by the Barge, Defendant submitted a notice of claim to Plaintiff and a sworn Statement of Loss. By letters dated January 24, 2008 and March 4, 2008, Plaintiff denied Defendant's claim stating, *inter alia*, that "we have no evidence that this claim comes within the coverage of the [Policy]." (Letter dated Jan. 24, 2008, attached as Ex. C to the Complaint.)

III. Discussion

A. Legal Standard

Summary judgment should not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202

(2d Cir. 2007) (citations and quotation marks omitted). "A fact is material when it might affect the outcome of the suit under governing law." Id. An issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. See Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried . . . . If the nonmoving party does not so respond, summary judgment will be entered against him." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted). The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . , or 'upon the mere allegations or denials of the [nonmoving] party's pleading.'" Id. (quoting Fed. R. Civ. P. 56(e)).

B. Contract Interpretation

"Under New York law, 'an insurance contract is interpreted to give effect to the intent of

3

the parties as expressed in the clear language of the contract.'"[2] Morgan Stanley Group Inc. v. New England Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000) (quoting Village of Sylvan Beach v. Travelers Indem. Co., 55 F.3d 114, 115 (2d Cir. 1995)); see also Seiden Assoc., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992) (stating that "[i]n reviewing a written contract, a trial court's primary objective is to give effect to the intent of the parties as revealed by the language they chose to use") (citation omitted). "When the question is a contract's proper construction, summary judgment may be granted when its words convey a definite and precise meaning absent any ambiguity." Seiden, 959 F.2d at 428 (citing Heyman v. Commerce and Indus. Co., 524 F.2d 1317, 1320 (2d Cir. 1975); Painton v. Co. & Bourns, Inc., 442 F.2d 216, 233 (2d Cir. 1971)); see also Morgan Stanley, 225 F.3d at 275 (stating that "[t]he initial interpretation of a contract is a matter of law for the court to decide") (citations and quotation marks omitted). However, "[w]here the language used is susceptible to differing interpretations, each of which may be said to be as reasonable as another, and where there is relevant extrinsic evidence of the parties' actual intent, the meaning of the words become an issue of fact and summary judgment is inappropriate . . . since it is only when there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." Seiden, 959 F.2d at 428 (citations omitted).

"Whether a contract is ambiguous, however, is a 'threshold question of law to be determined by the court.'" Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006) (quoting Duane Reade Inc. v. St. Paul Fire and Marine Ins. Co., 411 F.3d 384, 390 (2d Cir. 2005)). A contract is ambiguous if its terms "could suggest

---

[2] The parties agree that New York law applies.

4

more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Parks, 472 F.3d at 42 (citations and quotation marks omitted). "Conversely, language is not ambiguous when it has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference in opinion." Seiden, 959 F.2d at 429 (citations and quotation marks omitted). "[E]xtrinsic evidence may not properly be received, nor may a judicial preference be interjected," if the contract's language "unambiguously conveys the parties' intent." Seiden, 959 F.2d at 429. However, if the contract language is ambiguous, any ambiguity "must be resolved-as well as all inferences drawn-against the moving party" and "extrinsic evidence may properly be considered in the search for the contracting parties' intent." Id.

C. Application

Plaintiff asserts that the Barge was navigating in waters beyond the area designated in the navigational warranty of the Policy ("Navigation Warranty") and, therefore, the loss is not covered under the Policy.[3] The Navigation Warranty states that:

> It is a condition of this Policy that the vessel shall be confined to Atlantic Coastwise and Inland waters of New York and New Jersey. In no event shall the vessel be navigable

---

[3] The parties do not dispute that a breach of the Navigation Warranty need not be material to void coverage. See Cunningham v. Insurance Co. of North Am., 521 F. Supp. 2d 166, 170 (E.D.N.Y. 2006) (stating that "New York courts . . . have long held that breaches of marine insurance contracts . . . need not be material in order for the insurer to disclaim coverage").

beyond the limits permitted by the United States Coast Guard. If there is a failure to comply with this condition there is no coverage under this Policy.

(Navigation Warranty.)

Defendant argues, *inter alia*, that the "[N]avigation [W]arranty is at best ambiguous." (Def.'s Mem. of Law in Opp'n to Mot. for Summ. J., filed Nov. 17, 2008 ("Def.'s Mem."), p. 11.) Defendant contends, primarily relying on American Nat. Fire Ins. Co. v. Kenealy, 72 F.3d 264 (2d Cir. 1995), DeGeorge v. ACE Am. Ins. Co., No. 07 Civ. 2761, 2008 WL 180786 (S.D.N.Y. Jan. 17, 2008); and St. Paul Fire & Marine Ins. Co. v. Knickerbocker Steam Towage Co., 93 F. 931 (1st Cir. 1899), that the Barge was within the specified navigation area required for coverage under the Policy because the Navigation Warranty "provide[s] for navigation of the Atlantic Coastwise, i.e., the waters between ports on the Atlantic coast of the United States, 'and' the inland waters of New York and New Jersey." (Def.'s Mem, pp.7-8.) However, these cases are inapposite for several reasons, including the language of the navigational clauses.

The policy at issue in American Nat. Fire Ins., stated: "United States Atlantic Coastwise and Inland Waters between Eastport, Maine and Cape Hatteras, North Carolina." 72 F.3d at 266. Defendant does not dispute that "between Eastport, Maine and Cape Hatteras, North Carolina" modifies "United States Atlantic Coastwise" and "Inland Waters," but contends that, in order for the Navigation Warranty to limit "Atlantic Coastwise" to New York and New Jersey, it must specifically state "between," rather than "of" New York and New Jersey. (Def.'s Mem. p. 8). This contention is without merit. See Zurich Am. Ins. Co. v. ABM Indus., Inc., 397 F.3d 158, 165 (2d Cir. 2005) (stating that "[i]n interpreting an insurance contract under New York law, a court must strive to "give meaning to every sentence, clause, and word") (quoting Travelers Cas. & Sur. Co. v. Certain Underwriters at Lloyd's of London, 96 N.Y.2d 583, 594, 734 N.Y.S.2d

531, 760 N.E.2d 319 (2001)). Contrary to American Nat. Fire Ins., in which the navigational area is much broader because it includes Maine and North Carolina, as well as all states that border the Atlantic Ocean "between" Maine and North Carolina, in the instant case, the Navigation Warranty is restrictive, stating that the navigational area "be confined to Atlantic Coastwise and Inland waters of New York and New Jersey." (Navigation Warranty.)

In DeGeorge, the policy stated: "Atlantic coastwise and inland tributary waters of the United States and Canada between St. John, New Brunswick and Morehead City, North Carolina." 2008 WL 180786 at * 5. As in American Nat. Fire Ins., the navigational area in DeGeorge includes St. John, New Brunswick and Morehead City, North Carolina, as well as all states that border the Atlantic Ocean "between" New Brunswick and North Carolina. See DeGeorge, 2008 WL 180786 at * 5. Moreover, in DeGeorge, the court considered the scope of the navigational area to determine whether the vessel at issue was an "ocean going" vessel. 2008 WL 180786 at * 5. The court stated that "[since] Plaintiff's policy authorizes him to operate his vessel up and down the coast of the Atlantic Ocean from Canada to North Carolina, his vessel can only be classified as 'ocean going,' unlike vessels whose policy territory is confined to inland and coastal waters of rivers." Id.

In St. Paul Fire, the policy stated: "the port, bays, and harbor of New York, East and North or Hudson rivers, waters of New Jersey, Long Island Sound, and shores, and waters as far as New Bedford, and all <u>inland and Atlantic Coast waters of the United States</u>, and all waters adjacent, connecting, or tributary to any of the above waters . . . " 93 F. 932 (emphasis added). In St. Paul Fire the defendant argued, *inter alia*, that "all inland and Atlantic Coast waters of the United States" means "such of the coast waters as are inland waters." Id. at 933. The court rejected that argument explaining that it would render "the words 'Atlantic Coast' as

7

surplusage." Id.

Insofar as Defendant asserts that "applying the construction proposed by Plaintiff" would "render the word 'Atlantic' mere surplusage," and ignore . . . the . . . meaning given to . . . 'coastwise' in maritime trade, (Def.'s Mem. p. 10), such contention is without merit. None of the cases Defendant relies upon support this assertion and contract language does not become ambiguous "where one party's view 'strain[s] the contract language beyond its reasonable and ordinary meaning.'" Seiden, 959 F.2d at 429 (quoting Bethlehem Steel Co. v. Turner Constr. Co., 2 N.Y.2d 456, 459, 161 N.Y.S.2d 90, 141 N.E.2d 590 (1957)). For example, similar to the instant case, in American Nat. Fire Ins.,72 F.3d at 266, and DeGeorge, 2008 WL 180786 at * 5, the navigational areas are limited to certain states that border the Atlantic Ocean and the policies include the term "Atlantic Coastwise" as opposed to "Coastwise." Accordingly, none of the cases relied upon by Defendant support its construction.

The Navigation Warranty is not ambiguous as it "has a definite and precise meaning, unattended by danger of misconception . . . ," and "there is no reasonable basis for a difference in opinion."[4] Seiden, 959 F.2d at 429 (citations and quotation marks omitted). According to the Navigation Warranty, the navigational area is "confined to Atlantic Coastwise and Inland waters of New York and New Jersey." (Navigation Warranty.) Defendant seeks to re-write the Navigation Warranty to state: "confined to Atlantic Coastwise *of the United States* and Inland waters of New York and New Jersey." However, the Court may not re-write a contract when the language is unambiguous, see Cruden v. Bank of New York, 957 F.2d 961, 976 (2d Cir.1992),

---

[4] Since the Navigation Warranty is unambiguous, the Court does not consider any extrinsic evidence submitted, including the Charter Party. Seiden, 959 F.2d at 429.

and contract language "is not made ambiguous simply because the parties urge different interpretations." Seiden, 959 F.2d at 428.

Since the parties do not dispute that the Barge was off the coast of Rhode Island when it began "taking on water" and was "detoured . . . to [a] safe harbor near Fort Adams, Newport, Rhode Island," (Pl.'s 56.1 Stmt ¶ 9; Def.'s Rule 56.1 ¶ 9), Defendant was in breach of the Navigation Warranty and, therefore, "there is no coverage under th[e] Policy." (Navigation Warranty.)

To the extent that Plaintiff asserts that the Policy does not cover the loss as it did not result from an enumerated peril listed in the Policy, the Court need not decide this issue because, as discussed above, there is no coverage under the Policy because Defendant breached the Navigation Warranty.

Accordingly, the motion of Plaintiff for summary judgment is granted to the extent that it seeks a declaration that coverage under the Policy is denied based upon Defendant's breach of the Navigation Warranty.

IV. Conclusion

For the reasons stated herein, the motion of Plaintiff for summary judgment seeking a declaration that coverage under the Policy is denied based upon Defendant's breach of the Navigation Warranty is GRANTED. It is further Ordered that the joint motion of the parties to adjourn the conference scheduled for June 2, 2009 before the undersigned is DENIED as moot.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

---
Sandra J. Feuerstein
United States District Judge

May 18, 2009
Central Islip, New York